THE STATE v. JOHNS *et al., Appellants.*

Division Two, November 5, 1894.

124  379
164  494
124  379
170  ¹606

1. **Criminal Law**: OBSTRUCTING RAILROAD TRACK: STATUTE. It is a completed felony, under Revised Statutes, 1889, section 3588, to remove a rail from a railroad track, though there was no intent to derail the train or to imperil human life, but to inform the company's servants (as was done) of the condition of the track and thereby fraudulently to obtain a reward or employment for preventing a wreck.

2. ———: ———: ARGUMENT OF COUNSEL. Counsel for the state, on a trial of one for the foregoing offense, may, in their argument to the jury, properly discuss and comment on the peril to which passengers were exposed by the acts of the defendants.

3. ———: PROVINCE OF COURT: INSTRUCTIONS. It is the province of the court to instruct the jury as to the law and it is not error for it to refuse to permit counsel to read to the jury sections of the statute relating to the offense charged.

*Appeal from Macon Circuit Court.*—HON. ANDREW ELLISON, Judge.

AFFIRMED.

*Dysart & Mitchell* for appellants.

(1) The crime charged is a statutory offense, and the guilt of the defendants depends solely upon the intent or purpose they had in view in stopping the train. Sec. 3588. (2) A penal statute is construed liberally as in favor of a defendant, and strictly as against him. And no person is to be made subject to such statutes by implication. *State v. Bryant*, 90 Mo. 534. (3) An indictment for enticing away a female under the age of eighteen years from her father, for the purpose of concubinage and prostitution, is not sustained by proof that defendant's purpose in taking her away was to hide her disgrace and to shield his son, the father of her child, from prosecution, although the defendant had sexual intercourse with her on the way. *State v. Gibson*, 108 Mo. 575. (4) As illustrating the same principle, where the intention and purpose of the act is constitutive of the crime, see *State v. Maloney*, 105 Mo. 10; *State v. Hayes*, 105 Mo. 76, and 101 Mo. 316. (5) It has been held by high authority that the setting fire to a jail by a prisoner for the purpose of making his escape, is not arson, although the jail is to be deemed as an inhabited dwelling house within the meaning of the statute. *People v. Coterel*, 18 Johns. (N. Y.)

115; *State v. Mitchell*, 5 Ired. (N. C.) 350.   (6) It is evident that a person would not be guilty of burglary for breaking into a dwelling house for the purpose of getting possession of goods belonging to him, or to obtain possession of the building.   He would be guilty of trespass, and of forcible entry and detainer, surely not burglary, because the purpose to steal or commit a felony would be absent.   (7)   The court [erred in permitting counsel for the state, over the objection of defendants, to argue and comment upon the case as if brought under section 3589, for endangering the life of the passengers, and in refusing to allow counsel for defendants, in reply, to read and comment upon sections 3588 and 3589, for the purpose of showing the difference between said sections, and that peril to the passengers was not charged.

*R. F. Walker*, Attorney General, *Morton Jourdan*, Assistant Attorney General, and *R. W. Barrow*, Prosecuting Attorney, for the state.

(1)  The indictment is sufficient.   It clearly charges the offense of which the defendants have been convicted.   R. S. 1889, sec. 2588.   A similar indictment under the Texas statute has been approved in *Barton v. State*, 28 Tex. Ct. App. 483.   The same is true in Kentucky.   *Collins v. Commonwealth*, 26 S. W. Rep. 1. (2) It was shown that the rail of the track was displaced which, caused the obstructing of the passage of the cars; the crime was then complete. (3) Every person is presumed to intend the natural results of his own acts.   *State v. Patterson*, 116 Mo. 505.   (4) The admission of defendant Johns in his testimony clearly establishes the crime.   (5) The prosecuting attorney properly commented on the peril to which the lives of passengers were exposed by the acts of defendants.

GANTT, P. J.—At the September term, 1893, of the Macon circuit court defendants were indicted under section 3588, Revised Statutes of Missouri, 1889, which provides that "every person who shall willfully and maliciously place any obstruction by stones, logs or other things on the track of any railroad, *or shall tear up or remove any portion of a railroad,* or the works thereof, with intent to obstruct the passage of a car or cars thereon, or throw them off the track, shall, upon conviction, be imprisoned in the penitentiary not exceeding twenty years." They were jointly tried and convicted at the same term and sentenced to imprisonment in the penitentiary for two years, from which they appeal.

The indictment charges that the defendants did, on the third day of August, 1893, in Macon county, loosen and remove a rail on the Wabash railroad, "with the intent then and there, willfully, maliciously and feloniously, to obstruct the passage of a train of cars, then next to come along said track; and did then and there in manner and by the acts aforesaid, willfully, maliciously and feloniously obstruct the passage of a train of cars carrying passengers, along and over said railroad against the peace and dignity of the state." The defendants are each about eighteen years of age.

On the night of the third of August, 1893, the defendant, Harley Johns, signaled and stopped the passenger train coming from the north near a bridge some three quarters of a mile north of Atlanta, a station on the Wabash railroad in Macon county. When the train stopped Johns told the engineer and conductor that train wreckers had been interfering with the track; that he had overheard them talking, and that he had come to signal and warn the train. The engineer and Johns walked down the track, and the

train slowed down after them, and at a point about one fourth of a mile south from the place where the train was stopped they found a loose rail.

It was the east rail and the spikes had been drawn at the north end of the rail, and this end was pushed out of line some fifteen or eighteen inches. The rail was put in place and the train passed on, having been delayed about thirty minutes.

The officers of the railroad company instituted an investigation, and, prior to the arrest of the defendants, they both made a confession, admitting that they had drawn the spikes and turned out the end of the rail, and then arranged to signal and stop the train before it reached the place where the end of the rail was moved out. There is no conflict of evidence as to the intent and purpose of the defendants. It was to remove the rail and then notify the engineer of the next train and thus commend themselves to the railroad officials, to have them believe that they had rendered a signal and timely service, and thereby to obtain some reward, by way of promotion in the service of the company, or otherwise. Johns was, or had been in the service of the company, and his father was, and still is, station agent at Atlanta; he had access to the office at Atlanta, and knew the time of the arrival and departure of the trains at that town. The evidence shows that defendants took steps to insure the stoppage of the train before it reached the place of removal. The defendant Reynolds had not been in the service of the company, but he was to share in whatever reward and emolument that should be obtained by Johns. The defendants proved a good general reputation, both for honesty and fair dealing, and for truth and veracity, prior to the indictment.

The court, of its own motion, instructed the jury as follows:

"If the jury believe from the evidence that on or about the third day of August, 1893, at the county of Macon and state of Missouri, Harley Johns and S. O. Reynolds willfully and maliciously did tear up and remove an iron rail from its place in the track of the Wabash Railroad Company, with the intent to obstruct the passage of a train of cars along said railroad, and in fact did obstruct a train, then you should find them guilty, and assess the punishment of each at imprisonment in the penitentiary for not less than two years, nor more than twenty years.

"The jury are instructed that it is not necessary for the state to prove that defendants intended at the time to wreck the train, nor throw it from the track, nor to actually endanger the lives of any persons on the train; but if you believe from the evidence that the defendants removed said rail from its place, and then intended to and did give the danger signal, and stop the train in safety before it reached the torn-up rail, for the purpose of fraudulently obtaining a reward from the railroad company or the passengers, and that they intended, by removing this rail, to obstruct the passage of a train, and did so obstruct its passage for about thirty minutes, then they should find the defendants guilty."

And refused to instruct the jury, as prayed by defendants, that the guilt or innocence of the defendants depended upon the intent with which they removed the rail and stopped the train, and to acquit, if it was not their intent or purpose to obstruct the cars but to acquire and gain some notoriety and favor, or to recommend themselves to the company.

Over the objection of the defendants the court permitted the counsel for the state to argue and comment to the jury upon the great danger and peril to which persons on the train had been exposed by the

conduct of the defendants, and refused to permit counsel for defendants in reply to read the two sections in question, 3588 and 3589, and comment on the same, to show that section 3589 and the peril to passengers and other persons was not involved in the case.

I.  It is earnestly insisted by counsel for defendants that as defendants removed the rail from the track only for the purpose of affording themselves an opportunity of commending themselves to the railroad company and thereby procuring a job or employment by the company, and perhaps a reward from the passengers, under the mistaken view that they were indebted to defendants for averting a wreck of the train, and not with the malicious intent of derailing the train and imperiling the lives and limbs of 'the passengers and operatives, defendants can not be convicted, under the evidence, of the offense charged.  In other words, it is assumed that to constitute this statutory felony the defendants must not only have had the design of removing the rail which constituted an essential part of the railroad track and actually removed it and obstructed the train, but they must have had the specific intent to injure the railroad or kill and cripple its employees and passengers.  To this contention we can not yield our assent.

To constitute a crime there must be a criminal intent, but this intent need not include all the evil consequences that may, or naturally will, follow a given criminal act.  It was perfectly competent for the legislature to declare that an act so violative of the rights, both of the railroad company and its passengers and employees and so fraught with peril to them, as this evidence discloses was committed by these defendants, should be felony.  Such an act is wrongful and unlawful in itself, and, when this act of tearing up and

removing this rail was intentionally done, the criminal intent, the intent to do a wrongful, unlawful act existed and the offense denounced by the statute was complete. The mere fact that defendants not only intentionally removed the rail in violation of the statute, but also intended thereby to place the company under an obligation to them to give them lucrative employment, and the passengers to pay them a reward for a supposed virtuous act, in no sense deprives the act of removing the rail of its criminal character, but, on the contrary, aggravates it. These ulterior purposes were wicked and fraudulent in themselves, but they were not needed to make the offense complete; that was done when they intentionally did the act which the law declared was a felony. *Clifton v. State*, 73 Ala. 473; *Crawford v. State*, 15 Lea (Tenn.), 343; s. c., 54 Am. Rep. 423. We find no error in the instructions given, or in the action of the court in refusing those asked by defendants.

II. The remaining assignment is that the court erred in permitting counsel for the state in his argument to argue and comment on the great danger and peril to which the passengers on the railroad cars were exposed by the conduct of defendants, because the indictment was under section 3588 and not under section 3589, Revised Statutes, 1889.

The counsel for defendants in these public prosecutions seek to confine the rights of the counsel for the state in argument to exceedingly narrow limits. In this case, it would be hard to conceive of a reasonable discussion of the case, that would omit the reason for the statute itself. It is true defendants claim there was no crime in their act because of their precautions to avert the natural consequences of it, but their contention need not restrict the state to such a view. It must be borne in mind that this train would reach this broken

rail at a late hour of the night and these defendants had assumed the burden of warning the engineer of the danger which they had created. The attention of the engineer might have been attracted in another direction until too late to avoid the danger, to say nothing of the accidents that might have befallen defendants to prevent their giving the signals. Moreover, they were looking for one train only; they had taken no precautions to learn whether trains from the other direction might not also pass over this obstruction, and as to such no signals whatever were provided. All these risks were existing and all caused by their unlawful and willful act and it was entirely proper that the jury should consider them to arrive at a proper conception of the criminal character of defendants' conduct, notwithstanding their evidence as to their subsequent efforts to counteract it.

It was not necessary that they should have been indicted under section 3589 in order to authorize a discussion of the perils to which defendants had subjected the agents and passengers of the road, nor was any error committed in refusing to permit counsel for defendants to read the two sections 3588 and 3589, to the jury. It was the province of the court to instruct the jury as to all the law of the case, and if counsel for defendants desired specially an instruction that this prosecution was under section 3588 and not under 3589 and pointing out the essential differences between the two enactments, it was their duty to ask it and not to read the sections to the jury. It was the duty of the court to instruct on the case made, and not to negative one that was not attempted to be made. The judgment is affirmed. All concur.